IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABDUL ALI, R66933, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 3713 |
| | ) | |
| STEPHANIE DORETHY,[1] Warden, | ) | Judge Joan H. Lefkow |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Abdul Ali, currently in the custody of Stephanie Dorethy, Warden of Hill Correctional Center in Galesburg, Illinois, is serving a 42-year sentence for attempted first-degree murder and witness harassment. He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, his petition is denied.

## BACKGROUND

### I. Factual Background[2]

Ali was convicted of attempted first-degree murder and witness harassment. (Dkt. 15-1, Ex. D at 1.) The victim, Brian Cowins, was shot in the face while sitting in his car at approximately 3:00 a.m. on June 15, 2006. (*Id*. at 2.) Cowins testified at trial that, after leaving a

---

[1] The current warden of Hill Correctional Center is Stephanie Dorethy. Accordingly, Dorethy is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] The facts in this section are derived from the state court opinions and the record. For habeas review, "state court factual findings that are reasonably based on the record are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Kaczmarek* v. *Rednour*, 627 F.3d 586, 589 (7th Cir. 2010) (citations omitted); *see also* 28 U.S.C. § 2254(e)(1). Ali has not attempted to rebut the state court's recitation of the facts, so they are accepted as correct.

club, he pulled his car over under a streetlight to make a phone call. (*Id*.) A maroon Cadillac Catera passed his car, braked abruptly, and backed up. (*Id*.) When the front passenger window rolled down, Cowins saw Ali, whom he recognized from the neighborhood and knew as "Orr." (*Id*.) Ali then shot the victim and the Cadillac drove away. (*Id*.)

Concerned that he might die, Cowins "exited [his] car and wrote 'Orr' in blood on the windshield" before driving to a nearby gas station where the attendant called an ambulance. (*Id*.) During his hospitalization, the victim identified the shooter as "Orr" and "Abdul" to police, and a few days later identified Ali in a photographic array. *Id*. Ali was charged and released on bond. (*Id*.) In early September, while Cowins was in front of his home taking out garbage, Ali drove toward him in the Cadillac. (*Id*.) Ali showed Cowins a gun and threatened to shoot him again. (*Id*.) A week later, Cowins was in front of his home when Ali drove by and threatened to kill him.[3] (*Id.* at 2–3.) Cowins also denied that defense witness Reggie Rupert was his friend or that he had gone to the club with Rupert on the night he was shot. (*Id*. at 3.)

Officer Daniel Ortman testified that on June 23 he interviewed Cowins (who could not yet speak), and Cowins identified the shooter in writing as "Abdulel Mohmed." (*Id*.) Two days later, Cowins described the car involved in the shooting and named its perpetrator as "Ali Abdul." (*Id*.) Lieutenant James O'Donnell testified that another officer had informed him that the shooter's name was "Orr," "Oil," or "Abdul." (*Id*. at 4.) Lieutenant O'Donnell then compiled a set of photographs from a police database, and Cowins identified Ali from this set. (*Id.*)

Reggie Rupert testified for the defense and claimed that he had been with Cowins on the night of the shooting, but not at a club. (*Id*.) Rupert stated that Cowins dropped him off at a friend's house just before the shooting and, after hearing the gunshot, Rupert ran outside and saw

---

[3] Cowins's father testified to having witnessed the incident. (Dkt. 15-1, Ex. D at 3–4.)

2

a gold Bonneville drive away. (*Id.*) He also saw Cowins drive away without writing anything on his windshield. (*Id*. at 4–5.) While Rupert claimed he had never known Ali as "Orr," (*id*. at 4), he also testified that Cowins consistently named Ali as the shooter, (*id.* at 5).

Finally, Ali testified that he did not shoot the victim or have any reason to do so. (*Id.*). He did, however, confirm that the mother of his children owned a red Cadillac Catera that he sometimes drove, and he could not remember what he did the night of the shooting. (*Id.*).

The parties stipulated that Ali was arrested while in a red or maroon Cadillac Catera. (*Id.*) They also stipulated "that defendant had been arrested 17 times since 1995, and that the arresting officers, if called to testify, would testify that defendant did not indicate he was nicknamed 'Orr' or 'Oil.'" (*Id.*)

The trial court found Ali guilty on all counts. (*Id.*)

## II. Procedural History

Ali argued on direct appeal that his sentence was excessive and that "he was not proven guilty beyond a reasonable doubt of attempted first degree murder because the victim's uncorroborated eyewitness testimony was 'far too suspect and inherently unreliable.'" (Dkt. 4, Ex. D at 6.) The appellate court rejected both claims, detailing the grounds on which Ali's conviction could be construed as the decision of a rational trier of fact. *Id.* at 6. Ali subsequently filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, raising only his claim regarding the sufficiency of the evidence, (dkt. 23-1, Ex. M at 1), which was denied, (dkt. 15-1, Ex. E).

In his *pro se* post-conviction petition under the Illinois Post-Conviction Hearing Act, Ali contended that his trial counsel had been ineffective for failure to call certain witnesses—including a police gang expert who could testify regarding the significance of "Orr"—alongside

a variety of other claims. (Dkt. 23-2, Ex. N.) He also argued that appellate counsel had been ineffective for failing to raise trial counsel's ineffectiveness on these matters. Ali did not attach an affidavit from any proposed witnesses. *Id.* The trial court dismissed the petition as frivolous. (Dkt. 23-2, Ex. O.) Ali filed a motion to reconsider on the basis that his claims had arguable merit, but the motion was denied. (Dkt. 15-1, Ex. P.)

Ali then appealed, raising the sole claim that his trial counsel had been ineffective for failing to call a gang expert witness who could explain that the letters "O.R.R." on Cowins' windshield could have been a gang "tag" claiming credit for the shooting. (Dkt. 23-2, Ex. Q.) Again, Ali did not attach an affidavit from any proposed expert witnesses. The Illinois Appellate Court affirmed the trial court's dismissal, finding that Ali's post-conviction appeal did not attach any affidavit from a witness who could testify to an alternate meaning of "Orr." (Dkt. 15-1, Ex. F ¶¶ 13–14.) Ali then filed a PLA alleging that trial counsel was ineffective for not calling a gang expert. (Dkt. 23-3, Ex. T.) The PLA was denied. (Dkt. 15-1, Ex. G).

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) (AEDPA), requires this court to deny any petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See Price* v. *Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]," or "if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams* v. *Taylor*, 529 U.S. 362, 405, 407, 120 S. Ct. 1495, 1520 (2000). For a state court decision to be considered "unreasonable" under this standard, it must be more than incorrect; it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case." (internal citations omitted)).

## ANALYSIS

Ali raises three claims: (1) failure by the state to provide sufficient evidence to meet its burden of proving his guilt beyond a reasonable doubt; (2) ineffective assistance of trial counsel for failure to call a gang expert to testify about the meaning of the letters "O.R.R."; (3) ineffective assistance of appellate counsel for failure to raise the claim of ineffective trial counsel on direct appeal.

### I. Sufficiency of the Evidence

Ali argues that the state relied heavily on Cowins's uncorroborated testimony, which was not sufficient to meet the high burden of proof beyond a reasonable doubt. Because the state court denied this claim on the merits, this court considers whether the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." *Price*, 538 U.S. at 639.

"[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman* v. *Johnson*, 566 U.S. 650, 654, 132

S. Ct. 2060, 2064 (2012) (quoting *Jackson* v. *Virginia*, 443 U. S. 307, 319 (1979)). The Illinois Appellate Court recognized and applied this controlling precedent, issuing an opinion that was therefore not contrary to federal law as determined by the Supreme Court. (Dkt. 15-1, Ex. D, at 6.)

In its opinion, the Illinois Appellate Court cited *People* v. *Tatum*, 389 Ill. App. 3d 656, 661 (2009) for the proposition that a single positive identification by a witness can meet the state's sufficiency of the evidence burden, and it elaborated on the factors that may contribute to assessing such identifications. (Dkt. 15-1, Ex. D, at 7.) It dismissed Ali's contention that Cowins's identification was unreliable because he had been at a club, noting that Cowins had testified that he had not consumed alcohol to avoid adverse interactions with a medication he was taking. It also dismissed Ali's contention that Cowins's identification was unreliable because the shooting occurred at night and Cowins had only a brief glimpse of the shooter's face. The court observed that Cowins testified that the area was well lit, and it cited additional case law for the proposition that "the 'brevity' of a witness's observation" did not undermine his identification testimony. *Id*. Deferring to the trial court's findings of credibility, as evidenced by the verdict, the appellate court could not "say that no rational trier of fact could have found defendant guilty." *Id*. at 9.

Similarly, this court cannot say that the Illinois Appellate Court's decision involved an unreasonable application of federal law. The Supreme Court has stated that when reviewing habeas petitions, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman*, 132 S. Ct. at 2062 (citation omitted). Here, the Illinois Appellate Court properly

viewed the evidence in the light most favorable to the state and found that the record provided a reasonable basis to find Cowins's identification testimony credible. The Illinois Appellate Court was not required to find corroborative evidence, for it is "black letter law that testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar." *Woods* v. *Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009).

The Illinois Appellate Court's application of the proper standard was therefore not objectively unreasonable, and Ali's claim that the state did not meet its burden of proof fails.

## II. Ineffective Assistance of Counsel

Both of Ali's claims of ineffective assistance of counsel are procedurally defaulted. Procedural default takes two forms: failure to follow state procedural requirements or failure to exhaust all remedies available in the state courts before bringing a federal habeas petition. *Thomas* v. *Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (citations omitted). Ali's ineffective assistance of trial counsel claim is defaulted on the former ground, and his ineffective assistance of appellate counsel claim on the latter.

### A. Trial Counsel Claim

Where a state court has "declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements," the claims are defaulted on independent and adequate state grounds. *Thomas*, 822 F.3d at 384. "A state procedural ground is independent if it was expressly relied on by the state court in rejecting the claim, and it is adequate if it is a clearly established and consistently followed state practice at the time it is applied." *Johnson* v. *Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) (citations omitted). To preserve "principles of comity and federalism," federal habeas review is normally precluded under these circumstances. *Thomas*, 822 F.3d at 384; *see also Gray* v. *Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) ("If a state

7

court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then we are unable to consider that claim on collateral review.") (citation omitted)).

A petitioner seeking collateral relief under the Illinois Post-Conviction Hearing Act is required to attach "affidavits, records, or other evidence [to a petition] supporting its allegations or shall state why the same are not attached." 725 Ill. Comp. Stat. 5/122-2. The rule is well established, and Illinois courts regularly enforce it, making it an adequate state ground for denying post-conviction petitions. *See Jones* v. *Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) ("Illinois courts regularly enforce the affidavit rule.").

The trial court dismissed Ali's claim of ineffective assistance of trial counsel for failing to call particular witnesses because Ali failed to submit the required affidavits or even name the witnesses. (Dkt. 15-1, Ex. O at 6–7). The Illinois Appellate Court affirmed specifically on this ground. (Dkt. 15-1, Ex. F at ¶¶ 13–15 (noting that "[o]nce defendant claimed that [a police officer with experience in gang crimes] would testify in a certain manner, he was obligated to support that claim with an affidavit from such a witness. He did not.").) Ali was aware of the affidavit rule and that its purpose was to provide a source of independent corroboration of allegations. (Dkt. 23-2, Ex. N at 7.) He did explain why the documents he submitted were not notarized, (*id.* at 47), and stated that he was unable to access his trial records because they had not been returned to him by an attorney who decided not to represent him, (*id.* at 22), but he did not explain the absence of an affidavit by a gang expert who would testify on his behalf.

Because the Illinois courts dismissed Ali's ineffective assistance of trial counsel claim on the express ground that his petition did not comply with the established and regularly-followed affidavit rule, the claim is procedurally defaulted.

### B. Appellate Counsel Claim

Before submitting a federal habeas petition, a state prisoner must exhaust "the remedies available in the courts of the State." *King* v. *Pfister*, 834 F.3d 808, 815 (7th Cir. 2016) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires the prisoner "to fairly present his federal claims to the state courts." *Id*. Fair presentment in turn entails "assertion of a federal claim through one complete round of state-court review, which means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id*. at 816 (citation omitted). Petitioners who fail to present their claims at each level of the state courts have procedurally defaulted them. *Id*.

Ali included a claim of ineffective representation by appellate counsel in his initial post-conviction petition, arguing that appellate counsel should have raised the issue of trial counsel's failure to investigate the meaning of the letters "O.R.R." on Cowins's windshield or to explore the alternative defense that the letters stood for the phrase "Of Reggie Rupert." (Dkt. 23-2, Ex. N at 41–42). He abandoned this argument, however, in his subsequent appeal and PLA. (Dkt. 23-2, Ex. Q; Dkt. 23-3, Ex. T.)

Without "one complete round" of review by the Illinois courts, Ali's second ineffective assistance of counsel claim is also procedurally defaulted.

### C. Exceptions to Procedural Default

A federal court may consider a procedurally defaulted claim, but only if the petitioner makes a showing of (1) cause for the default and actual prejudice resulting from a violation of federal law, or (2) a fundamental miscarriage of justice resulting from the court's dismissal. *Crockett* v. *Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Ali does not raise either exception and so forfeits both. *Id*.

9

**III.    Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2),

> (1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal."

*Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (citations omitted).

For the reasons stated above, the court finds that there can be no substantial argument that the non-constitutional questions were incorrectly decided. *See Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Accordingly, the court declines to issue a certificate of appealability.

**CONCLUSION AND ORDER**

For the foregoing reasons, Ali's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal.

Date:  September 28, 2018

_____
U.S. District Judge Joan H. Lefkow